UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MISTY WINTERS, A.W., N.W., and G.W., | Case No. 19-CV-3177-SRN-KMM |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| JOSHUA WINTERS, KATHERINE WORLEY, PAUL DAURGAARD, TERESA DAURGAARD, BENJAMIN SCHENCK, ROBB SCHENCK, CRIS SCHENCK, BOB TAYLOR, SUE TAYLOR, LOIS SCHENCK, SARAH DESLESUIERS, SUZY PORTER, JOANNA FUNKE, COSTRA COSTA COUNTY—STATE OF CALIFORNIA, STATE OF UTAH, CITY OF MOAB, STATE OF MINNESOTA, HENNEPIN COUNTY POLICE DEPARTMENT PRECINCT 3, THE CORNER HOUSE, MAPLEWOOD POLICE DEPARTMENT, CHILD PROTECTIVE SERVICES OF HENNEPIN COUNTY, and WILLIAM PALMER, | |
| Defendants. | |

This matter comes before the Court on the Petition for Writ of Mandamus of

Plaintiffs Misty Winters, A.W., N.W., and G.W., ECF No. 2 (Petition).[1]  For the

---

[1] Ms. Winters apparently filed a redacted copy of the Petition (ECF No. 1) and an unredacted version (ECF No. 2). The unredacted version also attaches about twenty pages of exhibits. *See generally* Exs., ECF No. 2-1.  In what follows, Petition citations

following reasons, the Court recommends (1) denying the Petition's request that this Court appoint counsel for Ms. Winters, (2) dismissing the Petition without prejudice, and (3) denying as moot the Petition's request for an emergency injunction.

## I.   BACKGROUND

Ms. Winters originally filed the Petition in the U.S. District Court for the District of Maryland. *See* Pet. 1. After reviewing the Petition, the District of Maryland held that the District of Maryland was an inappropriate venue for the action and transferred it to this District. *See* Mem. 3–4, ECF No. 3.

The Petition is somewhat hard to follow. Ultimately, it describes various conflicts linked to a custody dispute between Ms. Winters and Defendant Joshua Winters over the couple's three children: Plaintiffs A.W., N.W., and G.W. *See generally* Pet. 3–13. As the Court understands it, orders entered by California state courts gave Mr. Winters primary custody, with Ms. Winters permitted certain scheduled visitations. *See, e.g.*, *id.* at 3–4. Ms. Winters alleges that Mr. Winters is (and has been) an unfit parent. *See, e.g.*, *id.* Among other things, Ms. Winters appears to want this Court to hold hearings about various motions and orders filed and entered in the California state-court proceedings. *See id.* at 5–6.

Alongside this dispute, the Petition also seeks to have this Court terminate certain criminal proceedings filed against Ms. Winters. *See id.* at 7–9. It appears that in February 2019, Mr. Winters agreed to let G.W. (then four years old) stay overnight with

---

are to the unredacted version. Because the Petition lacks page numbers, Petition citations use the pagination provided by the Court's CM/ECF filing system.

Ms. Winters. *See, e.g.*, Compl., *State v. Winters*, No. 27-CR-19-5434 (Minn. Dist. Ct. Mar. 7, 2019); Pet. 7 (March 2019 Complaint).[2] Taking G.W., Ms. Winters left Minnesota and traveled to California by bus. *See* Mar. 2019 Compl.; Pet. 7. Ms. Winters asserts that she "intended to press charges" (presumably against Mr. Winters) in California, but that a "bag of evidence failed to arrive . . . and was sent to Las Vegas by mistake." Pet. 7. As a result, Ms. Winters and G.W. went to Las Vegas, where they met Defendant Katherine Worley (Ms. Winters's mother). *See id.*

After meeting with her mother, Ms. Winters decided to drive G.W. back to Minnesota. *See id.* During this trip, "[a] presumed officer of the law" in Utah stopped their car. *Id.* at 8. That officer apparently learned that Minnesota authorities had issued a warrant for Ms. Winters's arrest and G.W. was eventually physically removed from Ms. Winters's custody. *See id.*; *see also* Mar. 2019 Compl. 4 (reflecting issuance of nationwide warrant).

Utah authorities then began the process of extraditing Ms. Winters to Minnesota, as Minnesota authorities had charged Ms. Winters with two counts of depriving another of custodial or parental rights. *See* Mar. 2019 Compl. 1–2; Pet. 9; *see also* Register of Actions, *State v. Winters*, No. 27-CR-19-5434 (Minn. Dist. Ct.) (Deprivation-Case Docket).) After Ms. Winters spent several weeks in Utah, authorities sent her to Colorado, then to Texas, then to Missouri, and then finally to Hennepin County, where

---

[2] The state-court records cited in this Report and Recommendation are not attached to any filings. They are publicly accessible, however, and this Court may take judicial notice of public court records. *See, e.g.*, *Bellino v. Grinde*, No. 18-CV-1013 (NEB/LIB), 2019 WL 368398, at *1 n.1 (D. Minn. Jan. 30, 2019) (citing cases).

3

Ms. Winters was finally released on April 16, 2019.  *See* Pet. 9.  Ms. Winters suggests that authorities deprived her of her due-process rights, and also that what she experienced violated "the law of [torts] and negligence, [and] also slander, defamation, and battery toward [Ms. Winters] and [her] children."  *Id.* at 10.  As for the underlying criminal charges, they have yet to be resolved; a jury trial is presently scheduled for February 3, 2020.  *See* Deprivation-Case Docket.

Another Petition section concerns a Minnesota state-court case started in April 2018, when—after an altercation between Ms. Winters and Mr. Winters—Minnesota authorities charged Ms. Winters with two counts of domestic assault and two counts of assault.  *See, e.g.*, Register of Actions, *State v. Winters*, No. 62SU-CR-18-0168 (Minn. Dist. Ct.) (Assault-Case Register); Compl. 1–3, *State v. Winters*, No. 62SU-CR-18-0168 (Minn. Dist. Ct. Jan. 16, 2018).  Court records show that Ms. Winters faces an outstanding warrant based on her failure to appear at a pretrial hearing in this matter; no trial date has been set.  *See* Assault-Case Register.  With respect to these proceedings, Ms. Winters claims that the charges against her are unsubstantiated, that the evidence used to justify them is contradictory and impermissibly includes materials from the interviews of children, and that the proceedings violate her due-process rights.  *See* Pet. 10–11.

The Petition contains multiple requests for relief, many of which are injunctive in character.  Ms. Winters seeks her children's return and demands that government officials take numerous investigative steps against Mr. Winters and others.  *See id.* at 12.  She also seeks monetary compensation from various individuals on several grounds—in particular,

4

from Mr. Winters for child support, and from various states for infringing on her constitutional rights. *See id.* at 13. She also requests that this Court grant a "motion to dismiss" both of the Minnesota criminal cases pending against her. *See id.* at 7. The Petition also contains a request for appointed counsel and a request for an "emergency injunction." *See id.* at 6, 11, 13.

## II.   ANALYSIS

In this Report and Recommendation, the Court first recommends dismissing any claims that Ms. Winters (a nonlawyer) seeks to bring on behalf of her minor children, then recommends denying the Petition's request for appointed counsel. It then notes that while Ms. Winters styles the Petition as a request for a writ of mandamus, that request is procedurally and substantively improper here. Given the Court's duty to treat pro se filings liberally, the Court will analyze the Petition as if it were a civil complaint. The Court concludes that (1) the Petition's potential claims against most of the defendants are frivolous; (2) the doctrine of *Younger* abstention indicates that the Court should dismiss various claims; (3) the sovereign immunity provided to states by the Eleventh Amendment precludes the Petition's claims against the States of Utah and Minnesota, and (4) the domestic-relations exception to this Court's jurisdiction dictates that the Court should dismiss what remains.

### A.   Claims of A.W., N.W., and G.W.

As a threshold point, the Court observes that Ms. Winters purports to bring the Petition not just on her own behalf, but also on behalf of her three children. *See* Pet. 1

5

(naming multiple plaintiffs). Nothing in the Petition suggests that Ms. Winters is a lawyer.

Because Ms. Winters is not a lawyer, she cannot represent anyone other than herself. *See, e.g.*, *Knoefler v. United Bank of Bismark*, 20 F.3d 347, 347–48 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity . . . in a court of the United States." (citing authorities)). This principle applies even to unrepresented parents who seek to bring claims on behalf of their children. *See, e.g.*, *Udoh v. Minnesota Dep't of Human Servs.*, No. 16-CV-3119 (PJS/SER), 2017 WL 9249426, at *4 (D. Minn. July 26, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 4005606 (D. Minn. Sept. 12, 2017), *aff'd*, 735 F. App'x 906 (8th Cir. 2018); *Burnett v. GlaxoSmithKline LLC*, No. 16-CV-01137 (JNE/KMM), 2016 WL 4728117, at *1 n.1 (D. Minn. Aug. 10, 2016) (citing *Vargason v. Dep't of Human Servs.*, No. 13-CV-0518 (DWF/LIB), 2013 WL 1315090, at *1 n.1 (D. Minn. Mar. 7, 2013)), *report and recommendation adopted*, 2016 WL 4728102 (D. Minn. Sept. 9, 2016).[3] The Court thus recommends that any claims by Ms. Winters's minor children be dismissed (without prejudice) from this action.

### B. Request for Counsel

The Court next turns to the Petition's request that Ms. Winters be appointed counsel. "A pro se litigant has no statutory or constitutional right to have counsel

---

[3] Even if Ms. Winters were represented by counsel, she might still not be able to bring claims on her children's behalf. Her ability to bring such claims likely hinges on her custodial rights: if she lacks those, she may lack standing to bring claims on her children's behalf. *See, e.g.*, *Udoh*, 2017 WL 9249426, at *4 n.11.

6

appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (citing *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985)); *see also In re Lane*, 801 F.2d 1040, 1042 (8th Cir. 1986) ("The decision to appoint counsel in civil cases is committed to the discretion of the district court.") (citing *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984)). Ms. Winters has shown a threshold ability to state her claims for relief, her claims do not appear to be factually or legally complex, and (most importantly) it is not clear that appointing counsel would benefit either Ms. Winters or the Court. The Court therefore recommends that the Petition's request for counsel be denied.

### C.   Propriety of Mandamus and Construal of Petition as Civil Complaint

While Ms. Winters's Petition is styled as a petition for a writ of mandamus, mandamus relief is inappropriate here.

The Petition does not specify the statute authorizing its request for mandamus relief. The Court will therefore assume that Ms. Winters relies here on the Mandamus Act, 28 U.S.C. § 1361. Section 1361 states that "[t]he district courts shall have original jurisdiction in any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

"Mandamus may issue under § 1361 against an officer of the United States only in extraordinary situations and when the plaintiff can establish (1) 'a clear and indisputable right to the relief sought,' (2) the state officer 'has a nondiscretionary duty to honor that right,' and (3) there is 'no other adequate remedy.'" *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016) (quoting *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006));

*see also Dean A. v. Berryhill*, No. 17-CV-5572 (TNL), 2018 WL 4623069, at *6 (D. Minn. Sept. 26, 2018) (quoting *Mitchael*).  With respect to the first two requirements, "'for mandamus to lie[,] the duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed as to be free from doubt.'"  *Mitcheal*, 809 F.3d at 1054 (quoting *Keeny v. Sec'y of the Army*, 437 F.2d 1151, 1152 (8th Cir. 1971)) (brackets in *Mitcheal*); *see also Dean A.*, 2018 WL 4623069, at *6.

Under these requirements, there are several reasons why the Mandamus Act does not support Ms. Winters's Petition.  First, § 1361's limited scope lets a federal district court compel only *federal* officers or employees.  *See, e.g.*, *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 591 (8th Cir. 2005); *Hebert v. Winona Cty.*, 111 F. Supp. 3d 970, 975 (D. Minn. 2015).  In this case, the Petition does not name a single federal employee or agency as a defendant; the governmental units it does name are state or municipal entities.  And even interpreted broadly, Ms. Winters only complains about her treatment by various state agencies and actors.  The Mandamus Act does not give this Court power over those entities.

Furthermore, Ms. Winters fails to show that any of the three requirements for mandamus relief exist here.  The Petition does not establish a "clear and indisputable" right to relief; it is far from obvious that any named defendant has a "nondiscretionary" and "plainly prescribed" duty to do any action that Ms. Winters requests; and there is little reason to believe that Ms. Winters lacks alternative remedies for much of the relief she seeks (e.g., raising related arguments in relevant ongoing state-court proceedings).

To the extent this Court construes the Petition as seeking a writ of mandamus, the Court recommends denying the Petition.

Although a writ of mandamus should not be issued, this Court must construe pro se filings liberally, s*ee, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014), and there is another plausible way to understand the Petition that the Court will also address. Specifically, Ms. Winters's Petition could be interpreted as trying to bring a full-blown civil action pressing her claims. Aspects of the Petition bolster this understanding—for instance, it seeks millions of dollars of monetary relief; provides lists of what appear to be possible causes of action; and names over two dozen different defendants, some of whom are not governmental employees of any sort. The Court will therefore analyze the Petition as if it were a complaint filed to commence a civil action.[4]

### D.    Frivolous Claims

Federal courts have the inherent authority to dismiss frivolous complaints *sua sponte* to preserve judicial resources and ensure proper judicial functioning. *See, e.g.*, *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 307–08 (1989) ("Statutory provisions may

---

[4] In these circumstances, this Court would normally indicate to Ms. Winters that it planned to construe the Petition as a complaint, and order her to either submit an application to proceed *in forma pauperis* (IFP) or pay this action's filing fee. *See generally* 28 U.S.C. § 1915 (setting rules for IFP proceedings). If Ms. Winters submitted an IFP application and this Court granted it, the Court could then screen the Petition pursuant to § 1915(e)(2)—including by analyzing whether Ms. Winters states a cause of action for which this Court can grant relief. In this case, however, the Court can bypass this step because (as discussed more below) it can issue recommendations that completely resolve this case by addressing issues that this Court can consider as part of its inherent authority or must address as part of policing its jurisdiction.

simply codify existing rights or powers. [28 U.S.C. § 1915(d)], for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision."); *Porter v. Fox*, 99 F.3d 271, 273 (8th Cir. 1996) (noting that district courts may *sua sponte* dismiss frivolous complaint before service). This authority extends not just to entire actions, but to individual claims within actions as well. *See, e.g.*, *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990) (affirming dismissal, as frivolous, of some but not all claims in complaint). A case is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Day v. Minnesota*, No. 19-CV-0496 (WMW/LIB), 2019 WL 3371132, at *2 (D. Minn. July 26, 2019) (quoting *Neitzke*). And when a complaint lacks any allegations explaining what a defendant did that could generate legal liability, the complaint lacks an arguable basis in fact as to that defendant. *See, e.g.*, *Radabaugh*, 2017 WL 8944024, at *4.

In this case, many of the named defendants are not the subject of any specific allegations. The Petition lacks any allegations about Defendants Paul Daurgaard, Teresa Daurgaard, Benjamin Schenck, Robb Schenck, Cris Schenck, Bob Taylor, Sue Taylor, Lois Schenck, Sarah Deslesuiers, Suzy Porter, Joanna Funke, the City of Moab, the Corner House, Maplewood Police Department, Child Protective Services of Hennepin County, and William Palmer. *See generally* Pet. 3–11 (containing Petition's factual recitations).[5] The Court thus concludes that the Petition is frivolous as to these

---

[5] The Court observes that in addition to the Petition, Ms. Winters has submitted to the Court not only the exhibits referred to footnote 1 supra, but a box of materials that appear

defendants, and recommends that any claims against them be dismissed without prejudice.

The Court also concludes that the Petition is frivolous with respect to Defendant Contra Costa County. To be fair, the Petition does have—barely—an allegation about the County: Ms. Winters asserts (within her list of relief requests) that the County engaged in "State Assisted Child abduction" and failed "to remedy the situation" after a request from Ms. Winters. Pet. 13.

But in the Court's view, there is no "arguable basis" for a claim against the County. To the extent Ms. Winters seeks to claim that the County violated her constitutional rights, she must bring the claim under 42 U.S.C. § 1983; the Constitution generally does not itself provide private rights of action. *See, e.g.*, *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (citing *Jett v. Dallas Indep. Sch. Dist.*,

---

to contain further information about the Petition and its background and an additional set of about 350 pages of documents. *See* Exs.; *see also* Letter from U.S. District Court for the District of Minnesota to Misty Winters (Jan. 2, 2020), ECF No. 6 (referring to box of documents); Suppl. Decl., ECF No. 7 (containing additional documents). To the extent that Ms. Winters wants the Court to review these materials to determine what allegations might apply to various defendants, the Court declines the invitation. Respectfully, it is Ms. Winters's job—not the Court's—to craft her filings. The Court will not look through the exhibits to determine what allegations they suggest or to find possible causes of action against the defendants. *See, e.g.*, *Murrin v. Avidigm Capital Grp., Inc.*, No. 07-CV-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008) (declining to look through documents to find "evidence that might establish a prima facie case" for certain claims, and citing cases supporting that position); *see also Elias v. Lichinov*, No. 19-CV-7457 (MWF/JC), 2019 WL 4140983, at *2 (C.D. Cal. Aug. 29, 2019) ("To the extent plaintiff may believe that the contents of his supporting documents establish that he has somehow stated a viable claim, he is mistaken. It is not the Court's responsibility to sift through plaintiff's multiple submissions in an attempt to glean whether plaintiff has an adequate basis upon which to state a viable claim." (citing *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009)).

11

491 U.S. 701, 735 (1989)). And because Ms. Winters purports to bring a claim against the County itself—the Petition lacks any allegations about any specific County employees—her claims against the County are so-called official-capacity claims. Yet official-capacity claims are limited in scope: "[a] municipality may be held liable under § 1983 for a constitutional violation that resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train." *Larson v. Bogenholm*, No. 18-CV-2554 (WMW/DTS), 2019 WL 5149985, at *9 (D. Minn. July 30, 2019) (citing *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)). The Petition's one-sentence County-related allegation has no reference whatsoever to any relevant policy, custom, or failure to train. In these circumstances, the Court concludes that any Petition claims against the County lack merit and are thus legally frivolous. The Court thus recommends that those claims be dismissed without prejudice.

      **E.**    ***Younger* Abstention**

The Petition's problems extend beyond frivolity. Even for those defendants about whom the Petition does contains allegations, and for claims the Petition might otherwise support, much of what Ms. Winters wants is outside this Court's jurisdiction. Because federal courts must police their own jurisdiction, they can analyze whether subject-matter jurisdiction exists *sua sponte*. *See, e.g.*, *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)); *Benjamin v. St. Cloud Hosp.*, No. 19-CV-1823 (NEB/LIB), 2019 WL 4918690, at *1 (D. Minn. Sept. 4, 2019) (citing cases), *report and recommendation adopted*, 2019 WL 4917124 (D. Minn. Oct. 4,

2019). In this case, at least two jurisdictional barriers prevent this Court from addressing core parts of Ms. Winters's claims.

Because part of the relief that Ms. Winters seeks involves stopping ongoing state-court criminal proceedings, this Court must address whether so-called *Younger* abstention applies. *Cf. Younger v. Harris*, 401 U.S. 37 (1971). "The *Younger* abstention doctrine provides that courts should not exercise federal jurisdiction where '(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding.'" *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013) (quoting *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010)).

With respect to the Petition's requests to interfere with Ms. Winters's state-court criminal matters, all three *Younger* elements are met. First, there are plainly "ongoing state proceeding[s]" here—namely, the proceedings that Ms. Winters wants this court to "dismiss." Second, those proceedings implicate important state interests in administering criminal law. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (noting state interests in administering criminal law). Finally, to the extent that Ms. Winters's objections to those proceedings arise from constitutional-law questions, the Court sees no reason why she cannot raise those questions in the state-court proceedings.

The Court thus recommends abstaining from addressing this action, at least to the extent that it would involve interfering with the Minnesota state-court criminal proceedings. The Court further recommends that Defendant "Hennepin County Police

Precinct 3" be dismissed from this action.[6]  As the Court reads the Petition, all of its allegations concerning Hennepin County police officers concern Ms. Winters's ongoing criminal proceedings.  *See, e.g.*, Pet. 9.  As a result, applying *Younger* abstention means that this Court lacks jurisdiction over any claims that the Petition may assert against "Hennepin County Police Precinct 3."

### F. State Sovereign Immunity

Within the claims and defendants that remain, Ms. Winters's claims against the States of Utah and Minnesota suffer from a common flaw: this court lacks jurisdiction over those claims because of states' Eleventh Amendment immunity from suit.[7]  Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."  U.S. Const. amend. XI.  And the issue is jurisdictional: under the Eleventh Amendment, federal courts generally lack subject-matter jurisdiction over claims against an unconsenting state.  *See, e.g.*, *Sossamon v.*

---

[6] Technically, "Hennepin County Police Precinct 3" is not a suable entity, given that sheriff's departments and police departments themselves generally are not considered legal entities subject to suit.  *See, e.g.*, *De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (citing cases); *Roberson v. Minnesota*, No. 16-CV-2578 (ADM/HB), 2016 WL 11198359, at *12 (D. Minn. Dec. 19, 2016) (citing *El-Alamin v. Radke*, 369 F. App'x 770, 771 (8th Cir. 2010)), *report and recommendation adopted*, 2017 WL 131742 (D. Minn. Jan. 13, 2017).  The Court therefore construes Ms. Winters's claims against "Hennepin County Police Precinct 3" as being claims against Hennepin County itself.

[7] Because Ms. Winters lists as one defendant "Costra County—The State of California," *see id.* at 1, it is unclear whether she means for the State of California to be a defendant in this suit as well.  To the extent she does, however, the State of California also enjoys the Eleventh Amendment protection discussed in what follows.

14

*Texas*, 563 U.S. 277, 284 (2011) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996)); *Gardner v. Minnesota*, No. 16-CV-03999 (JNE/KMM), 2019 WL 1084714, at *3–4 (D. Minn. Jan. 15, 2019) (quoting *Becker v. University of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999)), *report and recommendation adopted*, 2019 WL 1086338 (D. Minn. Mar. 7, 2019).

In this action, Winters—who appears to be a Maryland resident, *see* Pet. 14—seeks to sue two other states.[8] There is no indication that either state has consented to her suit in any way. This Court thus plainly lacks subject-matter jurisdiction over Ms. Winters's claims against the States of Minnesota and Utah. The Court thus recommends dismissing without prejudice any claims against these defendants.

### G. Claims Against Mr. Winters and Ms. Worley

After the above discussion, what remains are Ms. Winters's claims against two defendants: Mr. Winters and Ms. Worley. *See* Pet. 1. As an initial observation, it is unclear just what causes of action Ms. Winters means to press against Mr. Winters and Ms. Worley. As a starting point, however, the Petition's first three pages list numerous constitutional provisions and federal criminal statutes alongside various state-law causes of action. *See id.* at 2–3.

---

[8] To be clear, even if Ms. Winters were a Minnesota citizen, the Eleventh Amendment's bar would still apply to any potential claims against that state. Notwithstanding the phrase "another State" in the Eleventh Amendment's text, precedent establishes that "'an unconsenting State is immune from suits brought in federal courts *by her own citizens* as well as by citizens of another state.'" *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (emphasis added) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

To the extent Ms. Winters thinks that she has any federal-law causes of action against Mr. Winters and Ms. Worley, the Court disagrees.  With respect to the constitutional provisions, the Constitution's protections generally bar conduct by governments and government employees, not private actors.  *See, e.g.*, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (citing cases).  As for the federal criminal statutes, those generally do not provide a private right of action—that is, private plaintiffs cannot bring claims against others based on those statutes.  *See, e.g.*, *Meyer v. Ekola*, No. 15-CV-2564 (SRN/HB), 2017 WL 9274728, at *3 (D. Minn. May 26, 2017) (quoting *Sellors v. Obama*, No. 13-cv-2484 (SRN/JSM), 2014 WL 1607747, at *11 (D. Minn. Apr. 15, 2014)), *report and recommendation adopted*, 2017 WL 4040996 (D. Minn. Sept. 13, 2017), *aff'd*, 762 F. App'x 353 (8th Cir. 2019); *Smith v. Conway*, No. 15-CV-4286 (JNE/SER), 2016 WL 4734385, at *9 (D. Minn. July 29, 2016) (quoting *Sellors*, 2014 WL 1607747, at *11), *report and recommendation adopted*, 2016 WL 4727443 (D. Minn. Sept. 9, 2016).

The upshot is that to assess whether this Court has jurisdiction over Ms. Winters's claims against Mr. Winters and Ms. Worley, her purported claims based on the Constitution and federal criminal statutes do not count.  What remains are just the Petition's state-law claims.  This in turn means that this Court's jurisdiction over Ms. Winters's remaining claims rests on federal courts' *diversity* jurisdiction, not their *federal-question* jurisdiction.[9]

---

[9] At least in theory, diversity jurisdiction could exist here in a suit comprised merely of Ms. Winters, Mr. Winters, and Ms. Morley.  Ms. Winters appears to be a Maryland

This matters because federal courts' diversity jurisdiction contains a so-called domestic-relations exception. Under this exception, federal courts lack jurisdiction over matters pertaining to divorce, alimony, and child custody. *See, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *Jenkins v. Bowker*, No. 19-CV-1051 (NEB/LIB), 2019 WL 2931581, at *2 (D. Minn. June 4, 2019) (citing *Ankenbrandt*), *report and recommendation adopted*, 2019 WL 2921796 (D. Minn. July 8, 2019). Federal courts will also generally abstain from exercising jurisdiction over cases closely related—i.e., "inextricably intertwined"—with those topics, even if the case falls outside the specific contours of an action for divorce, alimony, or child custody. *See, e.g.*, *Wallace v. Wallace*, 736 F.3d 764, 766–67 (8th Cir. 2013) (citing *Kahn v. Kahn*, 21 F.3d 859, 861–62 (8th Cir. 1994)).

In this case, there appear to be state-court orders addressing the child-custody dispute between Ms. Winters and Mr. Winters. Ms. Winters disagrees with those orders, and vehemently disputes whether Mr. Winters should have custody. But the proper site for resolving that dispute is in the relevant state court or courts, not this Court. And what allegations the Petition contains regarding Mr. Winters and Ms. Worley all appear to relate to the underlying child-custody dispute between Mr. Winters and Ms. Winters. As a result, this Court lacks jurisdiction to resolve the Petition's disputes between Ms.

---

citizen, *see* Pet. 1, neither remaining Defendant appears to be, and Ms. Winters appears to claim an amount-in-controversy well over the threshold of 28 U.S.C. § 1332(a), *see id.* at 13 (claiming, among other things, $250,000 in restitution from "above individuals," a designation including Mr. Winters and Ms. Morley).

17

Winters, Mr. Winters, and Ms. Worley. The Court therefore recommends dismissing this last portion of the action without prejudice for lack of subject-matter jurisdiction.

### H. Injunction Motion

With the recommendation that the Petition's claims against Mr. Winters and Ms. Winters be dismissed, nothing remains of the action. The Court thus recommends that the action be dismissed. And because the Court recommends that this action be dismissed, it further recommends that the Petition's request for an emergency injunction is denied as moot.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Any claims in the Petition for Writ of Mandamus, ECF No. 2, purportedly brought on behalf of Plaintiffs A.W., N.W., and G.W. should be **DISMISSED** without prejudice.

2. The Petition's request that counsel be appointed for Plaintiff Misty Winters be **DENIED**.

3. To the extent the Petition is construed as a request for mandamus relief pursuant to the Mandamus Act, 28 U.S.C. § 1361, the Petition be **DENIED**.

4. To the extent the Petition is construed as a pleading intended to start a civil action, the Court recommends that the Petition be **DISMISSED** without prejudice.

5. The Petition's request for an emergency injunction be **DENIED** as moot.

Date:  February 11, 2020         *s/Katherine Menendez*
                                 Katherine Menendez
                                 United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).